IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
<u>EASTERN DIVISION</u>

| | |
|---|---|
| ALEASTA CALLAHAN, ) | |
| ) | |
| Plaintiff, ) | No.: 23 CV 03265 |
| ) | |
| v. ) | Judge Nancy L. Maldonado |
| ) | |
| XAYAH ENTERPRISES, LLC, d/b/a ) | Magistrate Heather K. McShain |
| HAROLD'S CHICKEN SHACK WEST LOOP, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF RULE 12(b)(1) &
12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant, XAYAH ENTERPRISES, LLC, d/b/a HAROLD'S CHICKEN SHACK WEST LOOP, by and through its attorneys, MAYER & MARSH, respectfully submits its Memorandum of Law in Support of its Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6):

## INTRODUCTION

In her First Amended Complaint, Plaintiff alleges a less than 3-month employment stint with Defendant interrupted by three separate and isolated incidents of a personal nature with a co-worker, Jerry. Plaintiff attempts to convert these three isolated incidents into Federal claims for sexual harassment and sex-based discrimination pursuant to the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"), and State law claims for assault and negligent retention, supervision and training. *(Docket "Dkt." #24.)* Unfortunately, for Plaintiff, the facts alleged in her Complaint do not support the causes of action alleged therein and the relief she seeks.

1

Initially, Plaintiff's Amended Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) because Defendant did not have an employment relationship with Jerry, the alleged co-worker at the root of Plaintiff's claims. Moreover, the lack of any such employment relationship prevents Defendant from being liable to Plaintiff for Jerry's actions under Title VII or Illinois law pursuant to Rule 12(b)(6). Finally, even if Jerry was an employee of Defendant, which he was not, Plaintiff's Title VII and state law claims all fail pursuant to Rule 12(b)(6) because: (1) any alleged "hostile work environment" sexual harassment was motivated by a personal dispute between Plaintiff and Jerry, not her gender; (2) Jerry's alleged harassment did not condition a term of employment on submission to a sexual demand as required for "quid pro quo" sexual harassment; (3) Jerry's alleged harassment was neither intentionally discriminatory, causally linked to any conduct by Defendant, nor causally linked to an adverse employment action as required for sex-based "disparate treatment" discrimination; and (4) Jerry's actions were outside the scope of his employment and thus insufficient to support Plaintiff's *respondeat superior* claims for assault, negligent retention, and negligent supervision and training. Accordingly, Plaintiff's First Amended Complaint should be dismissed in its entirety with prejudice.

## FACTUAL BACKGROUND

In her Amended Complaint, Plaintiff alleged she worked at Defendant's restaurant for less than three months from August 6th to October 2nd, 2022. *(See Complaint [Doc. #24], at ¶11.)* *("Compl. at ¶__.")* During this time, Plaintiff alleges she was "sexually harassed by one of Defendant's employees, Jerry (LNU)," as follows:

1. On August 12, 2022, Jerry walked by Plaintiff and grabbed her buttocks, squeezing it forcefully;

2

2. On August 17, 2022, Jerry again forcefully grabbed and squeezed her buttocks and told her, "that's [referring to Plaintiff's buttocks] going to be mine;" and

3. On or about October 2, 2022, Jerry threatened Plaintiff with a gun three times in retaliation of the complaints lodged against him and said, "I'll show you what type of n*gger I am."

*(Compl. at ¶¶ 15, 17, 20, 26, 27, 34.)* This is the entirety of Jerry's alleged employment relationship with Defendant and the alleged discriminatory conduct Plaintiff endured. *(Id.)* As a result of this conduct, Plaintiff did not return to work at Defendant's restaurant and alleges she was constructively terminated based on her sex (female) on October 2, 2022. *(Compl. at ¶¶ 30, 35.)*

Plaintiff's Amended Complaint is completely devoid of any facts establishing Jerry's employment with Defendant, other than the bald assertion she was "sexually harassed by one of Defendant's employees, Jerry (LNU)." *(Compl. at ¶ 15.)* However, as the attached affidavit of Norman Shropsheor attests, Jerry was not an employee of Defendant or a co-worker of Plaintiff. *(See Shropsheor Affidavit, ,attached hereto as Ex. "1," at ¶4.) ("Affidavit at ¶__.")* Rather, Jerry was a patron of Defendant's restaurant who showed up randomly and unexpectedly and occasionally performed odd tasks in exchange for cash. *(Affidavit at ¶5.)* Specifically, during the three months of Plaintiff's employment, Jerry was paid cash to help unload a van, sweep floors, and take out garbage at Defendant's restaurant on random occasions. *(Affidavit at ¶6.)* Jerry was never on the scheduled roster of employees who worked at Defendant's restaurant during Plaintiff's time on the job. *(Affidavit at ¶7.)* Jerry had no commitment to Defendant, and Defendant had no expectation as to when Jerry would show up, if at all, or what tasks he would perform on any given day, if any. *(Affidavit at ¶8.)* Defendant exerted no control or supervision over Jerry, and did not direct him on scheduling or performing any of the tasks he randomly performed at Defendant's restaurant. *(Affidavit at ¶9.)*

3

On or about November 18, 2022, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights and Equal Employment Opportunities Commission alleging the above same acts of discrimination. *(Compl. at ¶ 5.)* On or about May 2, 2023, Plaintiff received a Notice of Right to Sue from the EEOC and the filing of this lawsuit followed. *(Compl. at ¶ 6.)*

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction. "The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion." *Bolden v. Wells Fargo Bank, N.A.*, 2014 WL 6461690, at *2 (N.D. Ill. Nov. 18, 2014) (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009)). "If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiffs favor." *Bolden*, 2014 WL 6461690, at *2 (citing *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003)). A factual challenge to the court's subject matter jurisdiction, on the other hand, is based on the assertion "the complaint is formally sufficient but ... there is in fact no subject matter jurisdiction." *United Phosphorus*, 322 F.3d at 946. When considering a factual challenge to the court's jurisdiction, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (quoting *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007)). "Where jurisdiction is in question, the party asserting a right to a federal forum has the burden of proof, regardless of who raised the jurisdictional challenge." *Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008).

4

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. See Christensen v. Cnty. of Boone, 483 F.3d 454, 458 (7th Cir. 2007); Mattern v. Panduit Corp., No. 11 C 984, at *5 (N.D. Ill. Oct. 11, 2011). Under federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing the pleader is entitled to relief, sufficient to provide defendant with fair notice of the claim and its basis." Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted); Mattern, No. 11 C 984, at *5. When considering a Rule 12(b)(6) motion, the complaint is construed in the light most favorable to plaintiff; all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in plaintiff's favor. Id. However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). For a claim to have facial plausibility, plaintiff must plead "factual content that allows the court to draw the reasonable inference defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Further, the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged. Limestone Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 803 (7th Cir. 2008); Mattern, No. 11 C 984, at *5.

## ARGUMENT

### I. THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE JERRY WAS NOT AN EMPLOYEE OF DEFENDANT

The Court does not have subject matter jurisdiction over this lawsuit because Jerry, Plaintiff's alleged sexual harasser, was not Defendant's employee. Title VII makes it unlawful for "an

employer . . . to discriminate against any individual with respect to . . . sex," *42 U.S.C. § 2000e-2(a)(1)*. As with all Title VII claims, the existence of an employer-employee relationship between the parties of the alleged harassment is a predicate for liability. Title VII does not protect an employee from harassment by independent contractors or, in this case, the non-employee of a defendant employer. See *Knight v. United Farm Bureau Mut. Ins. Co., 950 F.2d 377, 380 (7th Cir. 1991)*.

Title VII defines "employee" as "an individual employed by an employer." *42 U.S.C. § 2000e(f)*. Determining if an individual is an employee within the meaning of Title VII involves examining five factors relevant to an employer-employee relationship: "(1) [T]he extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations." *Knight, 950 F.2d at 380*. After applying these factors here, it becomes apparent Jerry was not an employee of Defendant or a co-worker of Plaintiff.

As Mr. Shropsheor's affidavit attests, Jerry was not an employee but merely a patron of Defendant's restaurant who showed up randomly and unexpectedly and occasionally performed odd tasks in exchange for cash. *(Affidavit at ¶¶4, 5.)* Specifically, during the three months of Plaintiff's employment, Jerry was paid cash to help unload a van, sweep floors, and take out garbage at Defendant's restaurant on random occasions. *(Affidavit at ¶6.)* Jerry was never on the scheduled roster of employees at Defendant's restaurant during Plaintiff's time on the job. *(Affidavit at ¶7.)*

6

Jerry had no commitment to Defendant, and Defendant had no expectation as to when Jerry would show up, if at all, or what tasks he would perform on any given day, if any. *(Affidavit at ¶8.)* Defendant exerted no control or supervision over Jerry, and did not direct him on scheduling or performing any of the tasks he randomly performed. *(Affidavit at ¶9.)* Simply put, Jerry was not an employee of Defendant under the Seventh Circuit's legal framework. As such, Plaintiff's Amended Complaint should be dismissed as the Court lacks subject matter jurisdiction over this lawsuit.

## II. PLAINTIFF DOES NOT ALLEGE CAUSES OF ACTION FOR SEXUAL HARASSMENT OR SEX-BASED DISCRIMINATION

Title VII makes it unlawful for "an employer . . . to discriminate against any individual with respect to . . . sex," *42 U.S.C. § 2000e-2(a)(1).* As with all Title VII claims, the existence of an employer-employee relationship between the parties of the alleged harassment is a predicate for liability. Title VII does not protect an employee from harassment by independent contractors or, as in this case, the non-employee of a defendant employer. See *Knight, 950 F.2d 377, 380.* Since no employment relationship exists between Defendant and Jerry, Defendant cannot be liable for Jerry's alleged sexual harassment or discrimination of Plaintiff under Title VII. *(Id.)* As a result, Plaintiff's Amended Complaint should be dismissed with prejudice for this reason alone.

However, even if Jerry was an employee of Defendant, which he was not, Plaintiff's Title VII claims all still fail pursuant to Rule 12(b)(6). Counts I and II of Plaintiff's Amended Complaint are labeled "Sexual Harassment" and "Sex-Based Discrimination" respectively. *(See Complaint [Doc. #24].)* While not specifically identified, given the facts alleged, Plaintiff 's "Sexual Harassment" claim can only conceivably be based upon either a "quid pro quo" or "hostile environment" theory, and her "Sex-Based Discrimination" claim on a "disparate treatment" theory.

Regardless of the theory advanced, the conduct alleged in Plaintiff's Amended Complaint is legally insufficient to sustain a cause of action for "Sexual Harassment" or "Sex-Based Discrimination" under any of these theories. Accordingly, Counts I and II of Plaintiff's Amended Complaint should be dismissed with prejudice.

### A. Plaintiff Has Failed To Establish A "Hostile Work Environment" Claim

To state a "hostile-work-environment" claim, Plaintiff must allege: 1) she experienced unwelcome sexual advances, requests for sexual acts, or experienced any other verbal or sexual conduct; 2) the sexual conduct was so severe or pervasive to establish a hostile work environment; 3) the conduct was directed at her because of her sex; and 4) there is a basis for employer liability. See Mattern, No. 11 C 984, at *8; Quantock v. Shared Mktg. Serv., Inc., 312 F.3d 899, 903 (7th Cir. 2002). Here, Plaintiff cannot adequately plead she was subject to harassment based on a "hostile work environment" because her allegations stem from three unfortunate personal incidents she had with Jerry rather than her gender. See Galloway v. General Motor Serv. Parts Operations, 78 F.3d 1164, 1168 (7th Cir. 1996), overruled in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

In *Galloway*, a male employee (Bullock) and a female employee (Galloway) had a romantic relationship for two years. *Galloway*, 78 F.3d at 1165. After the relationship failed and until Galloway quit her employment, Bullock repeatedly called Galloway a "sick bitch"; and on one occasion made an obscene gesture at Galloway. *Id.* In holding this conduct did not rise to the level of harassment, the Seventh Circuit held:

> The repetition of the term together with the other verbal conduct that is alleged reflected and exacerbated a personal animosity arising out of the failed relationship rather than anything to do with a belief by Bullock, of which there is no evidence, that women do not belong in the work force or are not entitled to equal treatment with male employees. In these circumstances no inference could be drawn by a reasonable trier of fact that Bullock's behavior, undignified and unfriendly as it was,

8

created a working environment in which Galloway could rationally consider herself at a disadvantage in relation to her male coworkers by virtue of being a woman. The case was therefore properly dismissed.

*Id. at 1168.* The same conclusion is warranted here.

In this case, Plaintiff has not pled Jerry's alleged harassment was motivated by her gender rather than a personal dispute between the two. Indeed, the only allegations of harassment Plaintiff identifies concern Jerry grabbing her buttocks, stating her buttocks are going to be his, threatening her with gun, and stating "I'll show you what type of n*gger I am." *(Compl. at ¶¶ 17, 20, 26, 27, 34.)* None of these allegations, however, can plausibly support Plaintiff's "work environment was hostile because it is 'sexist rather than sexual.'" *Scruggs v. Garst Seed Co.,* 587 F.3d 832, 840 (7th Cir. 2009) (quoting *Boumehdi v. Plastag Holdings, Inc.,* 489 F.3d 781, 788 (7th Cir. 2007).

As acknowledged in *Galloway,* the relationship between harasser and victim is a factor to consider in analyzing whether the discrimination was based on sex." *Galloway,* 78 F.3d at 1168. Although *Galloway* was decided in the context of summary judgment, its guiding principle - that Title VII prohibits harassment to the extent it occurs because of an employee's gender - is relevant when considering a motion to dismiss. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80 (1998) *("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination . . . because of sex.").* Here, Plaintiff cannot establish the alleged harassment by Jerry was motivated by her gender rather than by a personal dispute between the two. Accordingly, Plaintiff cannot establish she was a victim of sexual harassment based on a "hostile work environment."

9

### B. <u>Plaintiff Has Failed To Establish A "Quid Pro Quo" Harassment Claim</u>

Plaintiff also cannot establish a "quid pro quo" harassment claim against Defendant because Jerry's alleged harassment did not expressly or implicitly condition a term of employment on submission to a sexual demand. Even if Plaintiff's allegations regarding Jerry's actions are liberally construed, Plaintiff's claim fails because she has not established Jerry was a supervisor or decision-maker who could influence her employment. *See, e.g., Lutes v. Loni Corp., Inc.*, No. 10 C 57, 2010 WL 1963170, at *2-3 (S.D. Ill May 17, 2010) *("Indeed, the quid in the claim's name represents the power or leverage that an employer and/or supervisor holds over his subordinates, which usually does not exist between mere coworkers.")*.

"Quid pro quo" sexual harassment under Title VII typically involves harassment occurring when "a *supervisor* conditions tangible job consequence on employee's submission to sexual demands or advances" *Brill v. Lante Corp.*, 119 F.3d 1266, 1274 (7th Cir. 1997) (emphasis added). In *Bryson v. Chicago State University*, 96 F.3d 912, 915-916 (7th Cir. 1996), the Seventh Circuit referred to a five-part test, in which a plaintiff must show: "(1) she or he is a member of a protected group, (2) the sexual advances were unwelcome, (3) the harassment was sexually motivated, (4) the employee's reaction to the supervisor's advances affected a tangible aspect of her employment, and (5) respondeat superior has been established." The fourth element asks "what tangible aspect of employment was affected," and the fifth element "recognizes a need to link the employer to the actions of the harasser." *Id.* Plaintiff cannot establish these elements here.

In Count I of her First Amended Complaint, Plaintiff fails to allege Jerry had the power to make his alleged harassment a term or condition of her employment. As such, Plaintiff cannot establish a "quid pro quo" claim for sexual harassment. Since Plaintiff can establish neither a

"hostile work environment" nor "quid pro quo" claim for sexual harassment, Count I of her First Amended Complaint must be dismissed with prejudice. See *Galloway*, 78 F.3d at 1168; *Mattern*, No. 11 C 984, at *11-12.

### C. Plaintiff Has Failed To Establish A "Disparate Treatment" Claim

Finally, to state a claim for "disparate treatment," Plaintiff must plausibly allege she was subjected to intentional discrimination based on her gender. See *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir.2014); *Stone v. Bd. of Trs. of N. Ill. Univ.*, 38 F. Supp. 3d 935, 944 (N.D. Ill. 2014). To prevail, a plaintiff must establish a discriminatory motive or intent. See *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 717 (7th Cir.2012); see also *Hildebrandt v. Ill. Dep't of Nat'l Resources*, 347 F.3d 1014, 1029 (7th Cir.2003). Although traditionally plaintiffs have sought to show the existence of a discriminatory motive through the "direct" and "indirect" methods of proof, recently this Court has suggested a move away from the "ossified direct/indirect paradigm" in favor of a simple analysis of whether prohibited discrimination can be reasonably inferred from the facts alleged and an adverse employment action based thereon. *Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013). No such motive or adverse employment action can reasonably be inferred from the facts alleged in Plaintiff's First Amended Complaint.

Here, Plaintiff has alleged, at most, a personal interaction with an individual, Jerry, whose conduct, while disgusting and repulsive, was not intentionally discriminatory. Moreover, Plaintiff has not alleged Defendant had anything whatsoever to do with Jerry's conduct or subjected her to an adverse employment action causally related thereto. Indeed, Plaintiff left her job voluntarily and claims to have been constructively discharged on the same day as her last interaction with Jerry without giving Defendant any opportunity to do anything about it. *(Compl. at ¶¶ 30, 35.)* A plaintiff

11

who alleges constructive discharge by way of discriminatory harassment must demonstrate a discriminatory work environment "even more egregious than the high standard for hostile work environment." *E.E.O.C. v. University of Chicago Hospitals*, 276 F.3d 326, 332 (7th Cir. 2002). This is because employees are generally expected to remain employed while seeking redress from harassment so the employer may have an opportunity to remedy the problem. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). Plaintiff failed to do so here.

The above requirements do not exist to impose additional hardships on the employee. They exist because courts are poorly situated to speculate over what would have happened had the employee stayed on board a little longer. *See Cigan v. Chippewa Falls School Dist.*, 388 F.3d 331, 333-34 (7th Cir. 2004) ("[t]he only way to know how matters will turn out is to let the process run its course. Litigation to determine what would have happened . . . is a poor substitute for the actual results of real deliberation within the employer's hierarchy."). Without such requirements employees could jump ship at the first sign of trouble on the job, and the federal anti-discrimination statutes would be warped into tools for combating everyday office pettiness rather than invidious discrimination. *See Hunt v. City of Markham, Ill.*, 219 F.3d 649, 652 (7th Cir. 2000) ("The idea behind requiring proof of an adverse employment action is simply that a statute which forbids employment discrimination is not intended to reach *every* bigoted act or gesture that a worker might encounter in the workplace." (emphasis in the original)).

Plaintiff's First Amended Complaint no doubt alleges a troubling situation involving Jerry's conduct. However, the problem for Plaintiff is she does not couple Jerry's conduct with sufficient action by Defendant to constitute a cognizable injury under the federal anti-discrimination statutes. *See generally Hunt*, 219 F.3d at 652-53. As a result, Count II of her First Amended Complaint must be dismissed with prejudice.

## III. <u>PLAINTIFF CANNOT STATE COMMON LAW CAUSES OF ACTION</u>

In her First Amended Complaint, Plaintiff asserts three state common law claims against Defendant: assault (Count III), negligent retention (Count IV), and negligent supervision and training (Count VI[1]). *(Compl. at ¶¶ 56-69.)* Plaintiff bases all three claims against Defendant on Jerry's alleged conduct. *(Id.)* However, Plaintiff cannot state a plausible entitlement to relief against Defendant for Jerry's conduct under the principles of *respondeat superior*. As a result, Counts III, IV and VI of Plaintiff's First Amended Complaint must be dismissed with prejudice.

Initially, holding Defendant liable for Jerry's actions under *respondeat superior* necessarily requires the existence of an employment relationship between them. Absent such an employment relationship, no liability can attach to Defendant for Jerry's actions under a *respondeat superior* theory. <u>See</u> *Moy v. County of Cook, 159 Ill. 2d 519, 523, 640 N.E.2d 926, 927-28 (1994) (to invoke doctrine of respondeat superior, relationship of principal/agent, master/servant, or employer/ employee must be established, as well as the wrongdoer is either employee, agent, or servant);* <u>see also</u> *Daniels v. Corrigan, 382 Ill. App. 3d 66, 75, 886 N.E.2d 1193, 1203-04 (2008) ("The doctrine of respondeat superior allows an injured party to hold a principal vicariously liable for the conduct of his or her agent.").* Since Defendant had no employment relationship with Jerry, Defendant cannot be liable for Jerry's conduct. *(Affidavit at ¶¶4-9.)* Accordingly, Plaintiff's state common law claims against Defendant must be dismissed for this reason alone.

Moreover, even if Jerry was an employee of Defendant, which he was not, under traditional principles of *respondeat superior*, Defendant is only liable for the torts of its employee if the tort is committed within the scope of employment. *Pyne v. Witmer, 129 Ill.2d 351, 356, 543 N.E.2d 1304,*

---

[1] While Plaintiff's First Amended Complaint contains five claims, she incorrectly labels her fifth claim as Count VI. Defendant will refer to Plaintiff's fifth claim as Count VI as numbered in her Amended Complaint.

13

*1308 (1989)*. The conduct may be "negligent, willful, malicious, or even criminal," as long as it is committed within the scope of employment. *Bagent v. Blessing Care Corp.*, 224 Ill.2d 154, 160, 862 N.E.2d 985, 991 (2007) (citing *Wright v. City of Danville*, 174 Ill.2d 391, 675 N.E.2d 110 (1996)). Conduct is considered within "the scope of employment," if the conduct: (1) is of the kind the employee is employed to perform; (2) occurs substantially within the authorized time and space limits; and (3) is actuated, at least in part, by a purpose to serve the master. *Id. at 992*. When the motive for the employee's tort is personal and solely for the benefit of the employee, the employer is not subject to liability. *Wright, 174 Ill.2d at 399, 675 N.E.2d at 118*. If, however, the employee acts to further his employer's interests as well as his own interests, the employer may be held liable under the doctrine of *respondeat superior*. *Bagent, 224 Ill.2d at 164, 862 N.E.2d at 995*.

Illinois courts have consistently held acts of sexual assault and misconduct are outside the scope of employment as a matter of law. *See Deloney v. Bd. of Edu. of Thornton Township*, 666 N.E.2d 792, 797-98 (Ill.App.Ct. 1996); *see also Deborah K. v. Sperlik*, No. 05 C 628, 2005 U.S. Dist. LEXIS 31179, at *9-10 (N.D. Ill. Nov. 30, 2005); *Graham v. McGrath*, 363 F.Supp.2d 1030, 1034 (S.D. Ill. 2005); *Hayes v. White*, No. 97 C 762, 1998 U.S. Dist. LEXIS 3652 (N.D. Ill. Mar. 23, 1998) (*"Illinois courts have held that acts of sexual misconduct are outside the scope of employment as a matter of law."*). When the employee's underlying motivation is personal, "it is necessarily unrelated to his employer's objectives. *Sperlik, 2005 U.S. Dist. LEXIS 31179, at *9* (citing *Sobieski v. Ispat Island, Inc.*, 413 F.3d 628, 635 (7th Cir. 2005)).

In this case, Plaintiff's state law claims are based exclusively on Jerry's alleged sexual misconduct. With respect to this sexual misconduct, Plaintiff's Amended Complaint contains absolutely no indication Jerry acted with anything other than personal motivation, or the conduct was the kind Jerry was employed to perform in his capacity as an employee of Defendant if he was an

14

employee of Defendant, which he was not. Thus, since Plaintiff relies exclusively on allegations of Jerry's alleged sexual misconduct to support her assault, negligent retention, and negligent supervision and training claims, the claims do not state a plausible entitlement to relief. Accordingly, Counts III, IV and VI of Plaintiff's First Amended Complaint should be dismissed with prejudice.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant, XAYAH ENTERPRISES, LLC, d/b/a HAROLD'S CHICKEN SHACK WEST LOOP respectfully request this Honorable Court dismiss Plaintiff, ALEASTA CALLAHAN's First Amended Complaint in its entirety with prejudice.

Respectfully submitted,

**MAYER & MARSH**

s/Michael Vincent Marsh
MICHAEL VINCENT MARSH
One of Defendant's Attorneys


Marc S. Mayer
Michael V. Marsh
MAYER & MARSH
123 West Madison Street
Suite 700
Chicago, Illinois 60602
Phone: (312) 980-0462
Facsimile: (312) 980-0465
mmayer@mayerandmarshlaw.com
mmarsh@mayerandmarshlaw.com

15