UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEASTA CALLAHAN, <br><br> Plaintiff, <br><br> v. <br><br> XAYAH ENTERPRISES, LLC, <br><br> Defendant. | No. 23 CV 3265 <br><br> Magistrate Judge McShain |

### MEMORANDUM OPINION AND ORDER

Pending before the Court are defendant Xayah Enterprises, LLC's motion to dismiss plaintiff Aleasta Callahan's complaint [27] and plaintiff's motion to strike an affidavit offered in support of the motion to dismiss [37].[1] The motions are fully briefed. [31, 35, 40, 42]. For the following reasons, both motions are denied.

### Background

In this case under Title VII of the Civil Rights Act of 1964 and Illinois tort law, plaintiff alleges that she was sexually harassed–and threatened by her harasser at gunpoint for reporting the harassment–while working for defendant, which operates a Harold's Chicken Shack restaurant in Chicago. [24] at ¶¶ 1, 8.

Plaintiff alleges that she worked for defendant from August 6, 2022 through October 2, 2022, when she was constructively discharged. [24] at ¶ 11. Shortly after she began working for defendant, plaintiff was "sexually harassed by one of Defendant's employees, Jerry[.]" [*Id.*] at ¶ 15. Plaintiff alleges that, on August 12, 2022, Jerry "grabbed her buttocks" and "squeez[ed] it forcefully," which caused plaintiff to feel distraught and unsafe at work. [*Id.*] at ¶¶ 17-18. A few days later, Jerry again "grabbed and forcefully squeezed Plaintiff's buttocks" and told plaintiff "that's [referring to her buttocks] going to be mine." [*Id.*] 20. Although plaintiff reported these incidents to "the store owner, Norman," plaintiff's complaints were ignored. [*Id.*] at ¶¶ 21-22.

Plaintiff alleges that, on October 2, 2022, "Jerry threatened [her] with a gun three times at Defendant's restaurant in retaliation of the complaints against him."

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

[24] at ¶ 26. According to plaintiff, Jerry "flashed the gun and waved it in [her] face, saying, 'I'll show you what kind of n***er I am.'" [*Id.*] at ¶ 27. Because "[t]he combined sexual harassment and threats to Plaintiff's physical safety became so intolerable that no reasonable person could continue to work" for defendant, plaintiff was "constructively discharged on October 2, 2022 due to the severity and frequency of the harassment and the retaliatory threats to her physical safety on the basis of her sex." [*Id.*] at ¶¶ 29-30.

Based on these events, plaintiff brings five claims against defendant: (1) sexual harassment under Title VII; (2) sex-based discrimination under Title VII; and three tort claims under Illinois law: (3) assault; (4) negligent retention; and (5) negligent supervision and training. [24] at ¶¶ 39-69. Defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim.

## Discussion

### I. Subject-Matter Jurisdiction

Defendant first argues that the complaint should be dismissed for lack of subject-matter jurisdiction because "Defendant did not have an employment relationship with Jerry, the alleged co-worker at the root of Plaintiff's claims." [27] 1. In support, defendant offers an affidavit from Norman Shropsheor, the owner/manager of the restaurant where plaintiff worked, which states that Jerry was merely "a patron" of the restaurant, not an employee, who "showed up randomly and unexpectedly and occasionally performed odd tasks in exchange for cash." [28-1] at ¶¶ 4-5.

Federal Rule of Civil Procedure 12(b)(1) permits the dismissal of complaints over which the Court lacks subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "In evaluating a motion under Rule 12(b)(1), a court must first determine whether the defendants raise a factual or facial challenge to subject matter jurisdiction." *Shiba v. Mayorkas*, Case No. 22 C 2357, 2023 WL 3819336, at *2 (N.D. Ill. Jun. 5, 2023). "[I]n a factual attack, the court may consider and weigh evidence outside the pleadings to determine whether it has the power to adjudicate the action." *N. Texas Equal Access Fund v. Thomas More Soc'y*, Case No. 22-cv-1399, --- F. Supp. 3d ----, 2024 WL 1376069, at *4 (N.D. Ill. Mar. 31, 2024) (internal quotation marks omitted). In contrast, a facial challenge "argues that the plaintiff has not sufficiently *alleged* a basis of subject matter jurisdiction." *Shiba*, 2023 WL 3819336, at *2 (emphasis in original).

Defendant's jurisdictional argument, which appears to raise a factual attack on the Court's subject-matter jurisdiction, lacks merit. "[T]he question whether an employer (or employee) is covered under Title VII is not a matter of subject-matter

2

jurisdiction, but rather goes to the merits of a plaintiff's claim for relief." *Dalton v. Sweet Honey Tea, Inc.*, No. 23 CV 1793, 2023 WL 8281524, at *3 (N.D. Ill. Nov. 30, 2023); *accord Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) (whether defendant employed "threshold number of employees for application of Title VII" was "an element of a plaintiff's claim for relief, not a jurisdictional issue"); *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 869 (7th Cir. 2011) (whether alien seeking relief under Title VII performed her work within United States was merits issue, not jurisdictional issue). Here, defendant argues that it is not subject to Title VII or cannot be liable under that statute because plaintiff's alleged harasser was not one of its employees. As the cases cited above demonstrate, issues relating to whether defendant is a covered employer go to the merits of plaintiff's claim, not subject-matter jurisdiction. Accordingly, the Court need not decide the factual question whether defendant employed Jerry because the Court would have subject-matter jurisdiction over the case regardless of whether Jerry was an employee. The Court therefore denies defendant's motion under Rule 12(b)(1).[2]

## II. Title VII Claims

Defendant argues that plaintiffs' Title VII claims should be dismissed under Rule 12(b)(6) because they are implausible.

A complaint must provide a "short and plain statement of the claim" showing that plaintiff is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2). "A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits." *Sloan v. Anker Innovations Ltd.*, No. 22 CV 7174, 2024 WL 935426, at *2 (N.D. Ill. Jan. 9, 2024). "In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor." *Id.* To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A. Sexual Harassment

Defendants first argue that plaintiff "cannot adequately plead she was subject to harassment based on a hostile work environment because her allegations stem from three unfortunate personal incidents she had with Jerry rather than her gender." [28] 8. According to defendants, plaintiff has not alleged that "Jerry's alleged

---

[2] Had defendant raised this argument under Rule 12(b)(6), the Court would have denied it because "[a]n employer can be liable under Title VII for a hostile work environment created by a third-party non-employee." *Westbrook v. Illinois Dep't of Human Servs.*, No. 16 C 5685, 2018 WL 1469035, at *9 (N.D. Ill. Mar. 26, 2018).

3

harassment was motivated by her gender rather than a personal dispute between the two." [*Id.*] 9. This argument, which rests on a distorted reading of the complaint that minimizes the harassment plaintiff allegedly experienced and invents reasons why Jerry would have harassed her (a "personal dispute between the two," [*id.*], that is never mentioned in the complaint), is beyond frivolous. In reviewing the complaint, the Court must accept plaintiff's allegations as true and view them in the light most favorable to her. *Sloan*, 2024 WL 935426, at *2. So viewed, the complaint permits a reasonable inference that Jerry repeatedly harassed plaintiff–by forcefully squeezing her buttocks and saying "that's . . . going to be mine"–because she was a woman and/or for purposes of obtaining sexual gratification. *See* [24] at ¶¶17-18, 20.

### B. Quid Pro Quo Harassment

Defendant next argues that plaintiff cannot establish a "quid pro quo harassment claim . . . because Jerry's alleged harassment did not expressly or implicitly condition a term of employment on submission to a sexual demand." [28] 10. According to defendant, because plaintiff did not allege that Jerry had the power to make submission to his sexual demands a term or condition of plaintiff's employment, her sexual harassment claim must fail. Defendant's argument is based on an accurate reading of the complaint, but it is ultimately irrelevant because plaintiff's sexual harassment claim is based on a hostile work environment theory, not a quid pro quo theory. "Under Title VII there are two types of sexual harassment: 1) hostile work environment; and 2) quid pro quo sexual harassment." *Jibson v. Ne. Illinois Reg'l Commuter R.R. Corp.*, Case No. 19 C 6773, 2020 WL 5366975, at *2 (N.D. Ill. Sept. 8, 2020). Plaintiff's harassment claim is clearly based on a hostile work environment theory, which requires her to allege that "1) "she was subjected to unwelcome harassment; 2) the harassment was based on her sex; 3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere; and 4) there is a basis for employer liability." *Id.* Because the plausibility of the sexual harassment claim does not depend on whether Jerry could make plaintiff's submission to his sexual demands a term or condition of her employment, the Court rejects defendant's argument.

### C. Sex Discrimination and Constructive Discharge

To plausibly allege a sex discrimination claim under Title VII, plaintiff "must demonstrate that her employer took an adverse employment action against [her] on the basis of her sex." *Garrett v. Family First Ctr. of Lake Cnty.*, No. 23 C 17074, 2024 WL 1858863, at *2 (N.D. Ill. Apr. 29, 2024). "[T]he plaintiff is not required to establish a prima facie case," and "the pleading standard for simple claims of . . . sex discrimination is minimal." *Id.* (internal quotation marks omitted).

Defendant argues that plaintiff's sex discrimination claim is implausible because it involves, "at most, a personal interaction with an individual, Jerry, whose

4

conduct, while disgusting and repulsive, was not intentionally discriminatory." [28] 13. This argument, just like defendant's earlier argument, simply fails to accept the allegations of the complaint as true and asks the Court to make a factual finding about Jerry's "real" reasons for grabbing plaintiff's buttocks and making a sexually suggestive comment to her. The Court finds that plaintiff's sex discrimination is plausible because it alleges that plaintiff was constructively discharged by defendant, and that the constructive discharged occurred only after plaintiff was groped and subjected to sexually suggestive comments by Jerry, threatened at gunpoint by Jerry after she reported his behavior to the store owner, and had complained about the harassment, both physical and sexual, and defendant took no action to remedy the situation.

Finally, the Court rejects defendant's argument that "Plaintiff left her job voluntarily" and that no constructive discharge occurred because plaintiff has not "demonstrate[d] a discriminatory work environment even more egregious than the high standard for hostile work environment" claims. [28] 11-12. It is obvious from the complaint that plaintiff is alleging that she quit her job involuntarily due to the harassment she experienced and defendant's failure to take appropriate remedial action. *See* [24] at ¶¶ 29-30. And with respect to plaintiff's claim that she was constructively discharged, "it is premature at the pleadings stage to conclude just how abusive [a plaintiff's] work environment was." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015). "When presented with a Rule 12(b)(6) motion, the question is simply whether [plaintiff's] allegations establish that her treatment could plausibly be abusive." *Dalton*, 2023 WL 8281524, at *5 (internal quotation marks omitted). Plaintiff's allegations that she was groped and subjected to a sexually suggestive comment, and that her harasser later threatened her at gunpoint after she reported the harassment, is sufficient at this stage of the case to support her claim that she was effectively forced to quit. *Cf. Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 829-30 (7th Cir. 2014) (reversing district court's judgment dismissing constructive discharge claim on the pleadings because court "cannot say . . . definitively at the pleading stage, which (we stress again) is before evidence is required," whether workplace was "intolerable").

\* \* \*

For these reasons, defendant's motion to dismiss plaintiff's Title VII claims is denied.

### III.  State Law Claims

Defendant argues that plaintiff's claims for assault, negligent retention, and negligent supervision and training should be dismissed under Rule 12(b)(6) for three reasons. First, defendant contends that it cannot be held liable for any tort Jerry committed because there was no employment relationship between it and Jerry. [28] 13. Second, defendant argues that, even if Jerry were an employee, it can be held

5

liable for Jerry's tortious conduct only if the tort was committed within the scope of his employment. [*Id.*] 13-14. But defendant contends that the Illinois courts have ruled that, as a matter of law, sexual assaults are not within the scope of employment. [*Id.*] 14. Third, defendant argues that, because all of plaintiff's tort claims are "based exclusively on Jerry's alleged sexual misconduct" that was outside the scope of his employment, all the tort claims should be dismissed.

First, the Court rejects defendant's argument that the assault claim should be dismissed based on the lack of an employment relationship between defendant and Jerry. The Court could not accept this argument without rejecting plaintiff's presumptively true allegation that Jerry was one of defendant's employees, *see* [24] at ¶ 15, and relying on the Shropsheor affidavit, which states that he was only a patron whom defendant paid to do the occasional odd job, *see* [28-1] at ¶¶ 4-5. The Court therefore rejects this argument.

Second, the Court also rejects defendant's argument that it cannot be held liable for Jerry's alleged assault of plaintiff because the assault was outside the scope of Jerry's employment. This argument presumes that the assault claim is based on Jerry's sexual harassment of plaintiff, *see* [28] 13-15; [35] 8, but the claim actually rests on Jerry's act of threatening plaintiff with a gun after plaintiff had complained about being groped by Jerry. *See* [24] at ¶ 57 ("Jerry intended to cause apprehension of harmful or offensive conduct" when he "threatened Plaintiff with a gun three times at Defendant's restaurant in retaliation of the complaints lodged against him"); [*id.*] at ¶ 58 ("The act of waving the gun in Plaintiff's face in a violent manner indeed caused reasonable apprehension in the victim that harmful or offensive contact would occur."). For that reason, defendant's reliance on Illinois case law holding that sexual assaults are not within the scope of employment is misplaced, and the Court declines to dismiss the assault claim.

Third, the Court denies the motion with respect to the claims for negligent retention and negligent supervision and training. Defendant does not make any argument specific to these claims, other than its vague contention that these claims relate to Jerry's alleged sexual harassment of plaintiff and should therefore be dismissed. *See* 28 [14-15]. But under Illinois law, claims of negligent hiring, retention, and supervision are "distinct from that of *respondeat superior*. Under a theory of negligent hiring or of negligent supervision, as well, the proximate cause of the injuries is the failure to exercise ordinary care in hiring or supervision, rather than the wrongful act of the employee." *Young v. Lemons*, 639 N.E.2d 610, 612-13 (Ill. App. Ct. 1994) (internal citations omitted). Accordingly, even if plaintiff's tort claims depended on the alleged sexual assault, that would not provide a basis for dismissing plaintiff's claims that defendant was negligent in retaining, supervising, and training Jerry. *See, e.g.*, *Doe v. Brouillette*, 906 N.E.2d 105, 115 (Ill. App. Ct. 2009) ("the torts of negligent hiring and negligent supervision do not require the wrongful act of the employee" and instead depend on whether "employer knew or should have known

6

that the person hired had a particular unfitness for the job that would create a foreseeable danger to others") (internal quotation marks omitted).

## IV. Motion To Strike

The Court denies plaintiff's motion to strike the Shropsheor affidavit as moot. As explained above, the Court has not considered the Shropsheor affidavit because it is either irrelevant to the Court's subject-matter jurisdiction or would require the Court to ignore plaintiff's well-pleaded allegations.

## Conclusion

For the foregoing reasons, defendant's motion to dismiss [27] and plaintiff's motion to strike [37] are denied. Defendant's answer or other responsive pleading is due within 14 days of the date of this decision.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: May 10, 2024**